The Baltimore City Passenger Railway Company
*vs.* John A. Hambleton.

*Subscription to Stock of Corporation—Rights of Subscriber.*

Where a corporation, already organized, has been authorized to increase its capital stock, a subscription to such new or additional stock does not of itself make the subscriber a stockholder, and entitled to have a certificate issued to him therefor; payment for the stock, as demanded by the company, being necessary to constitute him the owner thereof.

Appeal from the Circuit Court No. 2 of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before Alvey, C. J., Robinson, Bryan, Fowler, Page, McSherry, and Briscoe, J.

*Arthur W. Machen,* for the appellant.

*D. K. Este Fisher,* and *William A. Fisher,* (with whom was *Wm. Cabell Bruce,* on the brief,) for the appellee.

The jurisdiction of the Court of equity to compel the transfer by a corporation of its capital stock is well established. A bill in equity is the most usual and appropriate remedy. *Cook on Stock and Stockholders, sec.* 507; *Balto. City Pass. Ry. Co. vs. Sewell,* 35 *Md.,* 238; 1 *Morawetz on Corporations, secs.* 216, 220; 2 *Beach on Corporations, sec.* 657; *Klingensmith vs. Bean,* 2 *Watts,* 486; *Musselman's Appeal,* 65 *Penn. St.,* 480; *Telegraph Co. vs. Davenport,* 97 *U. S.,* 371; *Pomeroy's Equity Jur.,* 1412, (*New Ed.*).

As soon as the subscription was made for Miss Hollins, she became responsible for the price of the stock, and was the owner of the stock subscribed for, and being in no default under the subscription, she was entitled to all the ordinary rights of a shareholder with respect to such stock. *Spear vs. Crawford,* 14 *Wendell,* 24; *Chester Glass Co. vs. Dewey,* 16 *Mass.,* 101; *Sturges vs. Stetson,* 1 *Bissell,* 246; *Chaffin vs. Cummings,* 37 *Maine,* 82–83; 1 *Morawetz on Corporations,* secs. 46, 61, 72; 1 *Beach on Corporations,* sec. 61.

One of the leading objects indeed of the creation of corporations, and the grant of authority to issue stock is to enable the shareholders to transfer their interest with all practicable facility. *Steacy vs. Little Rock, &c., R. R. Co.,* 5 *Dillon,* 372; *Morgan vs. Struthers,* 131 *U. S.,* 252-3.

In the absence of some restrictions contained in the charter, or in the contract of subscription, the subscriber has the right, at least while he is in no default, to sell his stock at any time after the subscription has been made, and the purchaser from him is entitled to have the transfer made upon the corporate book to himself, and to receive an appropriate certificate of ownership. *Cook on Stock and Stockholders,* sec. 255, *and notes,* 394, 10; 1 *Beach on Corp.,* secs. 61-2; 1 *Morawetz on Corp.,* secs. 46, 61, 472; 1 *Waterman on Corp.,* sec. 302; *Boone on Corporations,* sec. 122; *Buffalo and N. Y. City R. R. Co. vs. Dudley,* 14 *New York,* 336, 346–7; *Boston and Albany R. R. Co. vs. Pearson,* 128 *Mass.,* 449; *Fletcher, et al. vs. McGill,* 110 *Indiana,* 405; *Mitchell vs. Beckman,* 64 *California,* 117, 121; *Lathrop vs. Kneeland,* 46 *Barb.,* 437-8; *Curry vs. Scott,* 54 *Pa. St.,* 275-6; *New Albany, &c., R. R. Co. vs. McCormick,* 10 *Indiana,* 501.

The subscriber is so completely a stockholder, as soon as the subscription has been made and accepted by the corporation, that he at once becomes liable to all statu-

Baltimore City Pass. Railway Co. *vs.* Hambleton.

tory liabilities imposed on *stockholders.* It has accordingly been held by the Courts always, that the subscriber, whose subscription has been accepted, is liable to the creditors under statutes which impose such liability on a stockholder beyond the amounts payable for the stock itself. *Angell and Ames on Corp., sec.* 621; *Spear vs. Crawford,* 14 *Wend.,* 20. See also 1 *Morawetz on Corporations, secs.* 61 *and* 472, *and note* 2 *to latter section.*

If any additional strength can be given to a proposition, incontrovertible upon the general principles of law, it is reinforced by the language of the charter of the appellant—Act of 1861-2, chapter 71, section 8, which in terms gives to the shareholder the right to have his stock transferred upon the books of the corporation.

An effort has been made by the counsel of the appellant to flank the propositions which have been above presented, by claiming that they were applicable only to subscriptions made before the organization of the corporation, and not to those made after the organization. But they are equally applicable in fact.

There is one and only one difference between the subscriptions which are taken before the organization of the corporation, and those which are taken by the corporation itself after it has been lawfully organized.

When the subscription is made before the corporation has been organized, it is a statutory one, dependent for its force and validity upon the terms of the law, and no further act by the corporation is necessary.

When the subscription is made after the organization, it is a contract between the subscriber and the corporation, and is governed by the rules of law applicable to contracts. Hence, ordinarily, there must be not only the act of subscribing by the subscriber, which is the offer to take the stock, but an acceptance in some manner by the corporation, so as to constitute a complete contract. 1 *Morawetz on Corp., sec.* 60, *and the cases cited in note* 1.

In this case, however, the subscription of Miss Hollins did not rest for its validity entirely upon the ordinary rules applying to such contracts of subscription made after organization.

The second section of the Act of 1890, chapter 271, under the authority of which the new issue of stock was made, enacted that "all the shareholders of the said company shall have the privilege of subscribing for the said new or additional stock ratably, and in proportion to their respective holdings, as shown on the books of the said company."

No formal act of acceptance of Miss Hollins' subscription was necessary since it was made in pursuance of this right guaranteed to her by the Act.

In the absence, however, of this statutory statement of her right to subscribe, it was one inherent in her relation of shareholder, of which she could not have been deprived. *Cook on Stock and Stockholders, sec.* 286, *and the cases cited in note* 4, *to this section; Gray vs. Portland Bank,* 3 *Mass.,* 368, 375, 379, 383.

McSHERRY, J., delivered the opinion of the Court.

By *chapter* 71 *of the Acts of* 1862 the Baltimore City Passenger Railway Company was incorporated. Its capital stock was limited to forty thousand shares, which in the course of a few years were fully paid up. The *Act of* 1890, *ch.* 271, made provision for the substitution of some other motive power in the place of horses, which were then used to draw the company's cars, and authority was given to the company by the Legislature to raise the money needed to effect this change, and to defray the expense of providing rapid transit. The company was accordingly authorized to increase its capital stock, but not beyond two hundred and forty thousand shares, and also to borrow upon bonds secured by mortgage an amount of money not exceeding its author-

ized capital stock. The Act declares that "all new or additional stock * * * * shall be paid for in money as and when the board of directors" shall call for the same, and that "all the shareholders of the said company shall have the privilege of subscribing for said new or additional stock, ratably and in proportion to their respective holdings," paying therefor the par value thereof. Under this Act of 1890 the shareholders, at a meeting held in July of that year, authorized the issue of forty thousand shares of new or additional stock, of the par value of twenty-five dollars per share, to be paid for in money as and when the board of directors should call for the same; and, following the directions of the Act, made provision for the shareholders to subscribe within a designated time for their respective ratable proportions thereof. Public notice was given of this action, and a circular containing the same information was sent to each shareholder.

Miss Cordelia D. Hollins was then the owner of eighty-five shares of the original stock, and electing to avail of the privilege accorded to the holders of that stock of subscribing to the new stock, caused her name to be entered in the company's subscription book by her brokers, McKim and Company, as a subscriber for eighty-five shares of the new or additional stock. Subsequently Miss Hollins died, and her executor sold to the appellee, John A. Hambleton, the eighty-five shares of original stock standing in her name, and these shares were duly transferred on the books of the railway company to the purchaser. Mr. Hambleton claimed, that by virtue of his ownership of these shares of the original stock he became likewise the owner of the eighty-five shares of new stock for which Miss Hollins had subscribed, and that he was entitled to have these new shares transferred to him on the books, and to have a certificate issued to him showing him to be the owner of them, subject to

the right of the company to exact from him the payment of the par value thereof. The railway company refused to make the transfer or to issue the certificate, and he thereupon filed a bill of complaint in Circuit Court Number Two of Baltimore City, praying for an injunction against the company, requiring it to make the transfer and to issue the certificate. After the company had answered and considerable testimony had been taken the case was heard and an affirmative injunction was directed to issue as prayed. From that decree the pending appeal was taken.

It will be observed that the shares in controversy are not part of the original stock of the company; they are some of the new or additional stock, and the distinction between these two classes—between original or formative stock and subscriptions for new stock, which a corporation after its organization has been authorized to issue—is important in its bearing on the decision of the principal question involved in this cause. There is a substantial difference between an increase of capital and a filling up of one both authorized and required. *Curry vs. Scott*, 54 *Pa. St.*, 276. When the subscription to formative stock precedes the creation of the body corporate which will ultimately issue the certificates, there is, of necessity, at the time such subscriptions are entered into, no corporation in existence with which a contract could be made. The subscribers, as a consequence, and for the very purpose of effecting an organization, become stockholders by the mere act of subscribing if there are no conditions precedent prescribed, and they are thereby invested with the privileges and subjected to the liabilities incident to that relation. The subscribers, in the absence of any statutory restrictions, acquire by such a subscription an interest in the body corporate and a right to participate in its organization. They all stand upon the same footing, incurring the risks and hazards of a fail-

ure of the enterprise or sharing its profits in proportion to their interests, and to give vitality to the artificial entity they must become stockholders immediately upon becoming subscribers, if no other method be provided in the charter. But the same reasons do not apply, and the same conditions do not obtain, in the case of new or additional stock authorized to be issued by an existing and completely organized corporation. A subscription to such new stock does not necessarily of itself make the subscriber a stockholder, because, generally speaking, it is a mere contract between the subscriber and the corporation. If by a mere subscription for new stock the subscriber becomes a stockholder, he at once becomes *clothed with all the rights of a stockholder, and without the payment of a dollar he would be at liberty to vote his stock, and entitled to claim dividends upon it.* As between shareholders of the same class there can be no discrimination, and profits set aside for dividends must be evenly divided amongst the stockholders according to the amount of stock each one owns. *Harrison vs. Mexican Railway Co., L. R.,* 19 *Eq. Cases,* 358. Hence the policy of a corporation might be moulded or controlled by mere subscribers, who have paid nothing upon their subscriptions, to the prejudice or loss of the full paid shareholders, whose money, contributed in the beginning, had actually developed the enterprise. Part of the stock would then be full paid and the rest would be stock upon which nothing had been paid—and yet the latter would possess all the advantages, privileges and incidents which belong to the former, and might be so managed as to render the paid up stock wholly or partially valueless. Whilst it has been held that stockholders who have partially paid for, but have not been called upon to pay up their stock in full, are entitled, when dividends have been declared, to participate therein equally with shareholders whose stock has been entirely paid for,

*Oakbank Oil Co. vs. Crum, L. R.*, 8 *App. Cases*, 65, still a *mere subscriber* for stock can claim no such right.

To constitute a subscriber for new stock a stockholder something more than a mere subscription is requisite—*payment* is necessary. The subscription is but the contract; *payment*, when called by the company and when made by the subscriber, constitutes him a shareholder whether a certificate has been issued or not. *Fulgam vs. Macon & Brunswick R. R. Co.*, 44 *Ga.*, 597; *Terwilliger vs. G. W. Tel. Co., el al.*, 59 *Ill.*, 249; *Johnson vs. Albany & Susq. R. R. Co.*, 54 *N. Y.*, 416; *Jay Gould vs. Town of Oneonta*, 71 *N. Y.*, 298. In *Pacific Nat. Bk. vs. Eaton*, 141 *U. S.*, 234, it was shown that the bank had resolved to double its stock and that the original shareholders were given the opportunity to take the new stock in the same proportion in which they held the old. Mary J. Eaton subscribed for forty shares—that being the number of her original shares—paid the full par value thereof and was furnished with a receipt acknowledging the payment "on account of subscription to new stock." The bank did not succeed in getting the whole issue of new stock taken, and with the consent of the Comptroller of the Currency, reduced the amount of the proposed new stock to the quantity actually subscribed, some forty thousand dollars less than the full increase originally intended. Subsequently Mary J. Eaton sued to recover back from the bank the money she had paid, and founded her claim upon the contention that her subscription was conditional upon the whole amount of new stock being taken; but the Supreme Court, reversing the Supreme Judicial Court of Massachusetts, held that she could not recover the money back, and that she had become a stockholder by subscribing and *paying* the price of the stock. Speaking through the late Mr. Justice BRADLEY, the Court said: "The case is not like that of a deed for lands, which has no force and is not a deed, and passes no estate, until it is

delivered. In that case every thing depends on the delivery. But with capital stock it is different. Without express regulation to the contrary, a person becomes a stockholder by subscribing for stock, paying the amount to the company or its proper officer and being entered on the stock book as a stockholder.'' Indeed, this has been distinctly so decided by this Court in *Busey, et al. vs. Hooper, et al.*, 35 *Md.*, 15. In that case it appeared that Busey, Bankard and McCurley subscribed for a majority of the shares of the capital stock of the Citizens Railway Company, but did not make a payment of five dollars per share when subsequently called on therefor; that the other subscribers met pursuant to notice, and elected officers and organized the company, whereupon Busey, Bankard and McCurley, claiming to have a majority of the stock, filed a bill in equity against these other subscribers alleging that these other subscribers had conspired and confederated together for the purpose of defrauding the complainants out of their just rights as stockholders, and that the pretended election was part of the machinery by which the defendants designed to accomplish the said fraud. The bill then prayed for an injunction to restrain the defendants from intermeddling in any way with the business or affairs of the Citizens Railway Company and for the appointment of a receiver. In the argument it was insisted ''that by virtue of their subscription to the stock of the corporation, the complainants became owners of the amount of stock subscribed for by them, and entitled to all the rights and privileges of stockholders; and such subscriptions made them members of the corporation and entitled to vote at elections.'' But this Court, in affirming the order dissolving the injunction, said: ''None of the cases decide that the mere fact of subscribing to the stock of an incorporated company constitutes the subscriber a stockholder, but that such subscription puts it in his

power to become a stockholder by compelling the corporation to give him the legal evidence of his being a stockholder, upon his complying with the terms of the subscription.'' In *St. Paul, Stillwater and Taylor's Falls R. R. Co. vs. Robbins*, 23 *Minn.*, 439, it was shown that Robbins had subscribed for preferred stock of the company; that this was not original or formative stock; that there had been no call or assessment upon the subscribers nor any demand for payment, but the company sued on the subscription and the question was whether the suit could be maintained. The Court said: ''It appears from the complaint, that at the time of this subscription, the company was fully organized, so that it does not stand upon precisely the same footing as a subscription made prior to, and for the purpose of effecting, the organization. Such a subscription gives to the subscriber an interest in the corperation, and the right to take part in organizing it, and this interest and right are a sufficient consideration to support his promise. But the subscription in this case does not appear to have been to the original stock; on the contrary, it appears that, after the company was fully organized, its board of directors authorized and directed the issuance of what, in the amended complaint, is called 'preferred capital stock,' and also directed that the company's books should be opened to receive subscriptions for the same. The mere subscription to this stock, while it constitutes a valid contract on the part of the company to issue the stock to defendant upon his paying for it, and, on his part, to receive and pay for it, does not give him an interest in the company, nor vest in him the title to the stock.''

The sale by Miss Hollins' executor of the eighty-five shares of old stock carried with it as an incident the right which the testatrix had previously acquired by virtue of her subscription, to purchase eighty-five shares

of the new stock, and the appellee has under the transfer made to him precisely that right and none other. The terms upon which the subscription was made by Miss Hollins are binding upon the appellee as they were upon her. Payment of the par value in money, at the times and in the instalments to be named by the directors, must be made before the title will pass. The subscriber binds himself to pay when requested, and the company in turn undertakes upon receiving payment to enter him as a stockholder on its books. Until this is done the contract is executory, and neither the subscriber nor his assignee is a stockholder, and consequently neither is entitled to a certificate of stock or to any other instrument indicating that he is the owner of the shares. The obligation he assumes to pay for the stock enures under *sec.* 64, *Art.* 23 *of the Code,* to the benefit of creditors of the corporation, but does not give him a beneficial interest in the body corporate as an owner of its stock until the stock has been paid for.

Mr. *Morawetz* in his work on *Private Corporations* has criticized the *Minn. Cases* and the case in 71 *N. Y.,* but we think they accord fully with *Busey's Case* in 35 *Md.,* and are not in conflict with any adjudged cases to which we have been referred. The decisions chiefly relied on by the appellee arose out of subscriptions to original or formative stock, and are for that reason distinguishable from the case at bar. We do not deem it necessary to review them, but our examination of them has satisfied us of the existence of this broad difference.

Many subordinate questions were discussed in the argument, but they are not material in view of the conclusion we have reached on the predominant and controlling one.

The decree of the Court below directed an injunction to issue as prayed, but for the reasons we have given, that decree was erroneous, and must be reversed. And

as Mr. Hambleton will not be entitled to any certificate until he becomes a stockholder as to these new shares, none of the relief sought under the bill can be granted, and the bill will, therefore, have to be dismissed.

> *Decree reversed, and bill dismissed,*
> *with costs above and below.*