In re PHŒNIX HARDWARE CO.

LONG et al. v. CHRISTY.

(Circuit Court of Appeals, Ninth Circuit.   March 5, 1918.   Rehearing Denied
May 13, 1918.)

No. 3011.

1. CORPORATIONS ☞89(1)—STOCKHOLDERS—LIABILITY.
    Where corporate stock was issued without subscription, the stockholders
    are liable to assessment, just as if they had been subscribers.
2. CORPORATIONS ☞228—UNPAID SUBSCRIPTIONS—LIABILITY.
    A corporation's unpaid subscriptions are a trust fund for the benefit of
    the general creditors of the corporation, and may be reached on the
    insolvency of the corporation.
3. CORPORATIONS ☞232(1)—STOCKHOLDERS—LIABILITY.
    Organizers of a corporation, who delivered to it a stock of goods and
    in exchange received the capital stock of the corporation, are, the value
    of the stock of goods being very much less than the par value of the
    capital stock, liable to general corporate creditors for the difference,
    though the transaction as between themselves and the corporation could
    not be questioned.
4. CORPORATIONS ☞268(5)—PETITION TO ASSESS STOCK.
    Where the petition of the trustee of a bankrupt corporation, seeking to
    assess the outstanding capital stock on the theory that it had not been
    fully paid in, alleged that the holders were subscribers, and the proof
    showed that the stock was issued without subscription, the variance was
    immaterial; the liability of the stockholders being the same in each case.
5. LIMITATION OF ACTIONS ☞66(4)—RUNNING OF STATUTE—BALANCES DUE
    ON UNPAID CAPITAL STOCK.
    Balances due upon unpaid capital stock of a corporation do not become
    payable, so as to start the running of limitation, until there has been a
    call or assessment.
6. CORPORATIONS ☞246—STOCKHOLDERS—LIABILITY.
    The liability of a subscriber for the capital stock of a corporation is
    several, and not joint.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

In the matter of the bankruptcy of the Phœnix Hardware Company, a corporation. Petition by Charles B. Christy, as trustee in bankruptcy, against J. B. Long and others, to assess the outstanding capital stock of the bankrupt corporation. A decree of the referee levying an assessment was affirmed on review to the District Court, and the defendants, stockholders, appeal. Modified and affirmed.

This is a proceeding instituted in the bankruptcy court to assess the outstanding capital stock of the bankrupt corporation, the Phœnix Hardware Company, for the purpose of raising funds with which to pay the creditors of the bankrupt concern. The Phœnix Hardware Company was incorporated March 19, 1907, with a capital of $50,000, consisting of 500 shares, at a par value of $100 each. The board of directors was to consist of three stockholders, to be elected annually; the following named persons being designated in the articles to serve as directors until their successors were elected, to wit: J. B. Long, J. W. Long, and M. West. On the same day that the articles of incorporation were executed, the board of directors held a meeting, at which J. B. Long was elected president, J. W. Long secretary, and W. J. Kingsbury

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

statutory agent. Subsequent to this time there were never any meetings held, either of the stockholders or of the directors, of which minutes were kept or recorded. In fact, no other board of directors was ever elected than that named in the articles of incorporation.

Immediately prior to the organization of this company, a few days perhaps, J. B. Long and M. West purchased a stock of goods from the Arizona Hardware & Vehicle Company, an insolvent concern, for the sum of $9,950, or near that figure, the invoice value of which was about $20,000. This stock was turned over to the Phœnix Hardware Company in consideration of the entire capital stock of the company, and the stock was issued as follows, as shown by the stock books:

> To M. West.....................250 shares.
> J. B. Long..................130 "
> J. W. Long.................. 80 "
> Margaret M. Long.......... 40 "

The referee finds that the subscribers to the capital stock paid $10,000 for the entire capital stock of the company, that by agreement the amounts paid on the subscriptions by each of the subscribers were credited thereon, and the balance unpaid of the par value of the stock was in effect credited by discount, and that the stock account between the bankrupt corporation and the subscribers was balanced. In pursuance of his findings, the referee levied an assessment upon the capital stock of the company of 33 per cent. allowing credits to the subscribers in amounts equal to the proportion of $10,000 each had paid and was credited with on the stock books, and entered a several order against each of the stockholders requiring payment of the sum found due upon the assessment. Upon review to the District Court, the orders and decrees of the referee were affirmed in all particulars, except that the stockholders were rendered jointly and severally liable for the several amounts found due under the assessment. The stockholders have prosecuted an appeal to this court.

W. J. Kingsbury, of Tempe, Ariz., and Joseph S. Jenckes and Struckmeyer & Jenckes, all of Phœnix, Ariz. (Metson, Drew & MacKenzie and E. H. Ryan, all of San Francisco, Cal., of counsel), for appellants.

J. C. Forest, of Phœnix, Ariz., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] Appellants insist that there were no subscriptions to the capital stock of the Phœnix Hardware Company, and that the entire capital stock having been exchanged for the stock of merchandise, it was not liable to assessment for payment of the debts of the corporation.

As to the subscriptions, it is probably true that there were none such made in name, but there is no doubt that the stock was issued to the parties named and they became the holders thereof. As such holders, they would become equally liable for the payment of calls upon the stock as if they were originally subscribers thereto. A subscriber agrees to take and pay for the shares as calls are made, and a holder is liable for the calls until the stock is fully paid. So the objection that the holders of the stock were not subscribers, or even that the stock was never subscribed, is without merit. The stock was issued, and the liability arises in either event.

[2, 3] It is urged that at common law corporation creditors cannot hold stockholders liable on stock issued for property. Whatever

it may be, we need not discuss nor determine the rule at common law in this regard. A doctrine has been established in the United States which is altogether sufficient for resolving the present controversy. We refer to what has been termed the "trust" doctrine as applied to unpaid subscriptions on the capital stock of a corporation. The Supreme Court, in Sawyer v. Hoag, 17 Wall. 610, 620 (21 L. Ed. 731), says:

"Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors of the corporation. And when we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen."

So in Sanger v. Upton, Assignee, 91 U. S. 56, 60 (23 L. Ed. 220), the court said:

"The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. * * * It is publicly pledged to those who deal with the corporation, for their security. Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company, as the cash which has been paid in upon it. Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as upon the payment of any other debt due to the company."

The doctrine has subsequently been reaffirmed in several cases. County of Morgan v. Allen, 103 U. S. 498, 26 L. Ed. 498; Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Richardson's Executor v. Green, 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363.

Some limitation has been impressed upon the doctrine by later adjudications, and, as now interpreted, it relates to the capital stock or assets of a corporation that has either suspended its business or has become insolvent, and whose assets have been placed in a court of equity, or other proper tribunal, and are in the course of administration for final settlement and distribution. 4 Thompson on Corporations (2d Ed.) § 3431; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113.

In Scovill v. Thayer, supra, it was held, among other things, that a contract of a corporation with its stockholders that they should never be called upon to pay any other assessment than that paid at the outset, while good as between the corporation and the stockholders, was a fraud in law upon creditors, which could be set aside whenever their rights intervened and their claims were unsatisfied.

Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468, 35 L. Ed. 88, is relied upon as supporting appellants' position. This case, along with Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104, and Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227, is referred to in Camden v. Stuart, supra, and the court says of them that they were not intended to overrule or qualify in any way

the wholesome principle adopted by the court in the earlier cases, and that they were only intended to draw a line beyond which the court was unwilling to go in fixing liability upon those who had purchased stock of a corporation, or had taken it in good faith in satisfaction of their demands.

Now, to apply the principle thus ascertained in the present case: The stock of merchandise of an insolvent concern was purchased by J. B. Long and M. West for $9,950. Immediately the Phœnix Hardware Company was incorporated, with a capital stock of $50,000, and the merchandise stock was turned into the company, in exchange for the whole of its capital stock. A board of directors was named in the articles of the corporation, and nothing else was done, except that it is shown that the articles were filed with the county recorder and the territorial auditor. The stock was issued, one half to M. West and the other half distributed among J. B. Long and his family. While the agreement to exchange $50,000 of capital stock for a stock of merchandise purchased for less than $10,000 would be binding as between the company and the stockholders, such an arrangement cannot always stand the test when the creditors are to be considered, and especially when the corporation has been overtaken by insolvency and bankruptcy. The creditors, when extending credit to the company had a right to believe that the concern had a bona fide capitalization of $50,000. With such a capitalization, it had the air of a big business concern, calculated to attract large credit. J. B. Long and M. West might have started business with the stock of merchandise when they purchased it. In that event, they would have been personally liable to their business creditors. By a promotion of the incorporation of the hardware company, and a turning of the business over to it, which was really all they did, they shifted that liability to the company, and relieved themselves.

Now, if it were designed that the company should start with a business capital equal only to the value of the stock of merchandise, it would have been fair to prospective creditors so to represent by capitalizing the company at that amount. Such a course of transaction could not have been characterized as a false representation to creditors. What these parties did, though in promoting the project, was to capitalize the concern at more than five times the value of the stock of merchandise, and then to accept the stock in payment thereof. Thus they constructed, apparently, a very substantial and reliable business entity, and so represented it to the business world. Yet they attempt to escape all stock liability by saying that they took the stock over as fully paid up in exchange for the stock of merchandise. Such a project or scheme is a fraud at law upon the prospective creditors of the corporation, and when the corporation is found to be insolvent the stockholders cannot be heard to say that their stock has been fully paid up. The unpaid stock must be regarded as a trust fund for the benefit of the creditors until they are themselves fully paid. The referee was right in allowing the value of merchandise as payment on the capital stock, but beyond that the stock was liable to assessment.

Nor do the cases of Coit v. Gold Amalgamating Co., 119 U. S. 343, 7

Sup. Ct. 231, 30 L. Ed. 420, and Bank of Ft. Madison v. Alden, 129 U. S. 372, 9 Sup. Ct. 332, 32 L. Ed. 725, help the appellants. In the former, property of the estimated value of $137,000 was put into the company in payment of $100,000 par value of stock. The court said in that case:

"If it were proved that actual fraud was committed in the payment of the stock, and that the complainant had given credit to the company from a belief that its stock was fully paid, there would, undoubtedly, be substantial ground for the relief asked. But where the charter authorizes capital stock to be paid in property, and the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint."

In the latter case it was simply held that a stockholder in an insolvent corporation, who has paid his stock subscription in full by a transfer of a tract of land, in good faith and at an agreed value, for the use of the company's business, is not liable in equity to a creditor of the corporation, who had knowledge of and assented to the transaction at the time when it took place, solely on the ground that the land turned out to be less valuable than was agreed upon.

Emphasis is laid by appellants upon the declaration by these authorities that actual fraud must be shown. It must be observed that the cases lay stress upon the good faith of the transaction as well. In the present case, the very project devised bears the impress of actual fraud, and is so flagrant as to dispel all idea of good faith. The suggestion that the capital stock was of no value at the time is without force. It constituted the measure of the capitalization of the company, and this is really what was important from the standpoint of persons who were asked to extend credit to the company.

[4] These considerations also dispose of the error assigned to the court's ruling in overruling the demurrer to the petition. If there was any irregularity relating to the petition, it was that there was a variance between the proofs and the allegation. The petition alleges a subscription. The proofs show that the stock was issued without the formality of a subscription. The stockholders were rendered liable in either event, so the variance was immaterial.

[5] The next assignment of error relates to the statute of limitations. Balances due upon unpaid capital stock do not become due and payable until there has been a call or assessment. The call in the present case was made by the referee in bankruptcy well within the period of the Arizona statute of limitations, and hence the statute has not run. This conclusion is so well within the case of Scovill v. Thayer, supra, which was concerning a bankruptcy matter, that it is unnecessary to discuss the question further than to cite the case.

The point made that the trustee had not collected the outstanding bills receivable is without merit. He made reasonable effort to collect them, and was unable to do so, except in slight measure.

[6] An objection is made to the decree that it is joint and several against all the stockholders. The order and decree of the referee in bankruptcy was several only, and the District Court by its decree rendered the liability joint and several against all. In this the court was in error. "The liability of a subscriber for the capital stock of a com-

pany is several, and not joint." Hatch v. Dana, 101 U. S. 205, 210, 25 L. Ed. 885. See, also, Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292, and 10 Cyc. 679.

The decree of the District Court will be modified to conform to this holding; otherwise it will be affirmed, with costs in this court to appellants.