### REAGAN v. MIDLAND PACKING CO. et al.

(District Court, N. D. Iowa, W. D.    April 22, 1924.)

No. 124.

1. **Corporations ⬅➡227—Creditors may resort to capital stock for satisfaction of claims.**

   The capital stock of a corporation is a fund to which creditors may resort for satisfaction of their claims.

2. **Corporations ⬅➡228—Subscribers for capital stock of existing corporation held liable for corporate debts to extent of unpaid subscriptions.**

   Subscribers for "shares" of the capital stock of existing corporation under contract frequently referring to "subscriber" and "subscription" *held* liable for corporate debts to extent of unpaid subscriptions; such contracts contemplating subscriber's contributions to original capital as manifested by original issue of shares of stock, and not purchase of shares owned by corporation.

3. **Corporations ⬅➡259(2)—Rule as to creditors' right to maintain bill against subscribers stated.**

   Judgment creditors, who have exhausted the property of the corporation, may maintain a bill in equity in a proper case against shareholders and subscribers to stock for such proportionate part of the unpaid balance of their subscriptions as may be necessary to pay the creditors' claims, but cannot in such suit recover full amount of balance between amount agreed to be paid and par value of stock, since such action must be at law.

4. **Corporations ⬅➡259(2)—Creditors' bill held to institute suit for accounting and pro rata assessment of liability against subscribers to capital stock, and not suit for full amount of balance.**

   Where creditors' bill against subscribers to capital stock of corporation alleged a liability of the defendants in the sum of more than $1,000,000 as the unpaid balance of their subscriptions, a claim of plaintiff for sum of $31,000, and practical exhaustion of assets *held* by receiver of cor-

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

poration, the suit was not for the full amount of the balance of the subscriptions, but for an accounting and a pro rata assessment of liability among defendants sufficient to pay plaintiff's claims, and their contribution, in view of Code Iowa 1897, § 1633.

5. Corporations ⬤⇒561(1)—Receiver entitled to assets.

.A receiver of a corporation is entitled to all its assets, including contracts of subscriptions and promissory notes given by subscribers.

6. Corporations ⬤⇒561(1)—Receiver and court by which he is appointed, and not creditors, had duty of controlling collection of corporation's claims.

It is duty of court appointing receiver, and of receiver, and not of creditors by independent suits on their own behalf, to control collection of corporation's claims.

7. Corporations ⬤⇒259(8)—Creditor could not maintain bill for proportionate share of balance due on subscriptions, where receiver had been appointed for corporation.

Corporation's creditor could not maintain bill in equity for proportionate part of unpaid balance of stock subscriptions necessary to pay creditor's claim, where receiver had been appointed for corporation, since in such case it is receiver's duty to collect balance on subscriptions.

8. Courts ⬤⇒308—Federal court has jurisdiction because of diversity of citizenship of plaintiff and defendant, though some persons for whom plaintiff sues may be citizens of same state as defendant.

Where there is diversity of citizenship between plaintiff and defendants, federal court has jurisdiction, though plaintiff sues also on behalf of other persons similarly situated as himself, some of whom may be residents of same state as defendant.

9. Courts ⬤⇒328(4)—Federal District Court has jurisdiction, if plaintiff's bona fide claim is over $3,000, though less amount is sought to be recovered from some defendants.

Federal District Court has jurisdiction, where amount of plaintiff's bona fide claim is over $3,000, exclusive of interest and costs, though amount sought to be recovered from some of the defendants is less than such amount.

10. Courts ⬤⇒312(2)—Diversity of citizenship of parties gave federal court jurisdiction in creditors' suit against stock subscribers, notwithstanding citizenship of plaintiff's assignor.

In creditors' suit against subscribers of corporate stock for proportionate part of unpaid balance necessary to creditors' claims, the federal District Court had jurisdiction because of diversity between plaintiffs and defendants, notwithstanding citizenship of judgment creditor of corporation, who assigned judgment to plaintiff, since the suit is not on the judgment, but on the contractual liability of defendants because of stock subscription.

11. Courts ⬤⇒273—Federal court had jurisdiction because of diversity of citizenship, though some of defendants resided in and were served in other district.

Federal District Court had jurisdiction because of diversity of citizenship, though some of the defendants resided in and were served with subpoenas in another district, under Judicial Code, § 52 (Comp. St. § 1034).

In Equity. Suit by John A. Reagan, as trustee, against the Midland Packing Company and others. On objections to jurisdiction and motions to dismiss plaintiff's bill. Objections to jurisdiction overruled and motions to dismiss sustained, with leave to file amendment.

Frederick G. Ingersoll, of St. Paul, Minn., and Robert J. Bannister, of Des Moines, Iowa, for complainant.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jepson, Struble, Anderson & Sifford, Kindig, McGill, Stewart & Hatfield, Burgess & Gill, Griffin, Griffin & Griffin, E. J. Stason, and J. A. Berry, all of Sioux City, Iowa, Healey & Breen, of Ft. Dodge, Iowa, Mallory & Leming, of Hampton, Iowa, E. A. Morling, of Emmetsburg, Iowa, Riniker & Thomas, of Rock Rapids, Iowa, and North & Pollock, of Omaha, Neb., for certain defendants on objections to jurisdiction and motions to dismiss.

MUNGER, District Judge. The motions to dismiss, filed on behalf of many defendants, challenge the sufficiency of the bill. In brief, the bill alleges that the plaintiff, suing for his own benefit and for the benefit of others similarly situated who may wish to join in the suit, is a judgment creditor of the Midland Packing Company, and has had an execution returned unsatisfied. The company in 1918 was organized under the laws of Iowa as a corporation for pecuniary profit, to engage in the business at Sioux City, Iowa, of packing meat and similar activities, and it did engage in that business there. Its authorized capital stock was $3,500,000, and a later amendment to its articles authorized an increase of the capital to $8,000,000. It sold $5,000,000 of its common and preferred stock, and obtained subscriptions for stock to the amount of $3,000,000, on which $3,000,000 is unpaid. The Midland Packing Company is insolvent, and its property is in the hands of a receiver appointed in this court in the case of Havner v. Hegnes. The plaintiff alleges that each of the defendants signed, at some date in 1918, 1919, or 1920, a written agreement reading as follows (except that in each contract the number of shares, the kind of stock, whether common or preferred, the date of subscription, and the name of the witnesses to the signature were inserted):

"No. ———.                                         No. Shares, ———.

"Subscription Contract to Capital Stock.

"Midland Packing Company, Sioux City, Iowa.

"Authorized Capital Stock, $8,000,000.00 (Incorporated under the Laws of the State of Iowa.)

"Par Value, $100.00 per Share. Fully Paid and Nonassessable.

"I hereby subscribe for ——— shares of the capital stock of the Midland Packing Company, Sioux City, Iowa, and agree to pay therefor one hundred ($100.00) dollars per share, payable as follows: Not less than one-fourth cash, accompanying this application, and the balance thereof, as evidenced by my promissory note of this date, with interest at six per cent.

"This subscription is entered into with the understanding that the capital stock of said corporation is composed of cumulative participating preferred stock and common stock; that the stock hereby subscribed for is [common or preferred] stock, and the preferred stock is guaranteed seven (7%) per cent. dividend each year; after said preferred stock receives seven (7%) per cent. dividends for the current year and any accumulations thereon, the common stock shall receive seven (7%) per cent. for the current year.

"Any additional dividends paid in that year shall be paid at the same rate on all stock, both preferred and common, without distinction as to class. This contract is entered into with the further understanding that the voting power at all stockholders' meetings is lodged in the holders of common stock.

"It is further agreed that the preferred stock is subject to redemption at two hundred ($200.00) dollars per share, plus any earned dividends, at any time after ten (10) years from the date of its issuance, at the election of the

board of directors. Each stockholder's liability is limited to any unpaid balance due on his stock.

"It is expressly agreed that no stock is to be issued until the amount of this subscription and note given therefor is paid in full in cash, and any payment becoming due on the stock hereby subscribed for, or any note given therefor, not paid within sixty days after due, shall, at the option of the corporation, cause this subscription and note or notes given therefor to become null and void, and all payments made on this subscription by the subscriber shall become the property of the corporation absolutely as liquidated damages for the failure of the subscriber to carry out this contract.

"The company may reject this application by refunding all moneys paid thereon. This subscription contract contains the entire contract between the subscriber and the company, and no agent or representative of the company or any other person has any power to change or alter the terms of this subscription.

"I hereby agree that, before selling or agreeing to sell the stock hereby subscribed for, I will first offer same to the Midland Packing Company.

"All payments will be made to the Midland Packing Company at Sioux City, Iowa.

"Dated this ———— day of ————, 1919.

"————————, Subscriber.

"————————, Residence.

"————————, Occupation.

"Witness: ————————."

It is alleged that the defendants are all of the persons residing in the Northern judicial district of Iowa who signed their agreements and who have not paid the amounts due, and that they owe the company a balance of $1,279,404.70 on such agreements, and that the general claims of the creditors who loaned money or sold goods to the company amount to $1,750,000. There are also claims of stockholders who have sued to rescind their subscriptions, amounting to over $2,000,000. The company's property, other than the balance due upon these agreements, is of but nominal value. The plaintiff asks for an accounting to fix the assets and liabilities of the company and the amount of its unpaid stock subscriptions, and a decree fixing a percentage that each of the stock subscribers should pay, and for a judgment against each defendant for such an amount of the balance unpaid by him on the written agreement signed by him as will be sufficient to pay the plaintiff's claim. The theory of the plaintiff is that the capital stock of the company is a fund to which the creditors may resort for the satisfaction of their claims. On behalf of some defendants the claim is made that the defendants are not stockholders, nor are they such subscribers to the capital stock as may be required to contribute to the payment of the plaintiff's claim, by the method of this suit in equity against them. It is not alleged that any of the defendants was a stockholder in the company, except so far as the written contract may have obligated him. There is no allegation of the receipt of certificates of stock, nor that any of the defendants had fully paid the amount he had agreed to pay for shares of stock, nor is there any allegation of estoppel by the defendants to deny that they were stockholders.

(1) The liability, under the Iowa laws, for payment of the full par value of stock in a corporation held by a stockholder is not created by the Iowa statutes, but depends on general principles of law. Clark v. Bever, 139 U. S. 96, 108, 11 Sup. Ct. 468, 35 L. Ed. 88; First Nat.

Bank v. Peavey (C. C.) 69 Fed. 455; Wishard v. Hansen, 99 Iowa, 307, 68 N. W. 691, 61 Am. St. Rep. 238.

[1] (2) The capital stock of the company is a fund to which creditors may resort for satisfaction of their claims. Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731; Sanger v. Upton, 91 U. S. 56, 60, 23 L. Ed. 220; Scovill v. Thayer, 105 U. S. 143, 154, 26 L. Ed. 968; 14 Cor. Jur. 950; 6 Fletcher on Corps. § 4095.

[2] (3) Are the defendants, who signed in 1918, 1919, or 1920 the written agreement pleaded, subscribers to the capital stock, who may be held for the corporate debts to the extent of their unpaid subscriptions? There are decisions which make a distinction between subscriptions for shares in a corporation to be formed thereafter, and subscriptions for shares in a corporation already organized, and holding that, while in the former case the subscribers become stockholders when the corporation is organized, in the latter case the subscribers do not become stockholders nor liable to a creditors' suit, at least in the absence of a tender of the stock by the corporation to the subscriber, and are only liable for a breach of a contract of purchase of shares and only for the difference in value between the agreed price of the shares and their market value. Rhey v. Ebensburg Co., 27 Pa. 261; Bole v. Fulton, 233 Pa. 609, 82 Atl. 947. See, also, Baltimore City Pass. Ry. Co. v. Hambleton, 77 Md. 341, 26 Atl. 279.

But this is not the general view of the relation between subscribers to stock in a corporation, although the subscription is made after the charter is granted, or after the articles are filed under the laws of those states which authorize the company to begin business upon the filing of articles of incorporation. In Spear v. Crawford, 14 Wend. (N. Y.) 20, 28 Am. Dec. 513, Crawford as a creditor of the Harlaem Canal Company, a corporation, sued Spear as an alleged stockholder, under a New York statute making the corporate stockholders liable individually for corporate debts to the nominal amount of stock held by the stockholder, and allowing the creditor to sue one or more of the stockholders. The company had been previously incorporated and owned much property. Spear's liability depended on a written subscription which read:

"We, the subscribers, do severally agree to take the shares by us severally subscribed in the Harlaem Canal Company,"

—to which his name was attached, and specifying 16 shares as the amount. The testimony disclosed that Spear had never met with the stockholders, nor done any act to make him a stockholder, other than signing the subscription paper, and that there was no evidence on the books of the company of his being a stockholder, except this subscription paper, and that his name was listed among the stockholders. Spear had paid no part of the subscription. It was contended on behalf of Spear that the subscription did not make him a stockholder, but the court, after citing cases, said:

"It is true that none of these cases decide the precise point, *that the mere fact of subscribing to the stock of an incorporated company constitutes such subscriber a stockholder.* But they do decide that such subscription puts it in his power to become a stockholder, in the broadest and most unqualified sense of the term, by compelling the corporation to give him the legal evi-

dence of his being a stockholder, upon his complying with the terms of the subscription, and, on the other hand, that it puts it in the power of the corporation to compel him to pay for the shares subscribed by him, and thereby to become a stockholder to that amount. Neither party, therefore, can escape from the obligations created by the subscription, without the consent of the other; and I am inclined to think that this state of things is sufficient to constitute the subscribers stockholders, within the meaning of the term, as used in the ninth section of this act, where the rights of third persons are concerned. It was the policy of the act to give to the creditors of the corporation the security of the individual members thereof, and persons dealing with the company have a right to look to the subscription for the stock as one means of determining who the stockholders are. As long as the relations subsisting between the subscribers and the corporation are such that the corporation can compel them to pay for their stock, it seems to me the policy of the act requires that they should be considered stockholders. Any other construction would put it in the power of the corporation to collude with the subscribers and defraud the creditors, to a certain extent, of the benefit of this provision of the statute."

(4) It is obvious that there may be sales of its stock by a corporation, as distinguished from subscriptions to its stock. A corporation may buy its shares and resell them, and that would not ordinarily be called a subscription to the capital by the new purchaser. There is no reason for such a distinction between those who agree to take shares of the original issue of shares before and those who agree to take such shares after the corporate articles are filed. In the ordinary mode of incorporation under state laws, articles of incorporation are often filed by incorporators, none of whom have subscribed for shares of stock, or who may have subscribed for only one share each. The real subscription for shares of the capital is accomplished after this preliminary organization, and when the definite powers and limitations of the corporation have been expressed by its recorded articles of incorporation. It also frequently happens that the corporation is possessed of no property at the time of filing of its articles, and that the subscribed capital is the only fund with which the corporation acquires its property. At the time of incorporation the corporation has power to issue its shares; but it does not, in any proper sense, own such shares. All of those who join in the enterprise of accumulating the capital of the corporation, represented by subscriptions to the original issue of capital stock, should be regarded as subscribers, rather than purchasers, whether the agreement is made before or after the articles are filed. 2 Fletcher on Corps. §§ 521, 522; 1 Cook on Stocks, § 10. The distinction declared by the decision of the Supreme Court of Pennsylvania, above cited, was also announced by the Supreme Court of Minnesota in Railroad Co. v. Robbins, 23 Minn. 439; but a later case (Marson v. Deither, 49 Minn. 423, 52 N. W. 38) overrules this decision, saying:

"And, so far as this question is concerned, we can see no distinction between a subscription to the stock of a corporation already fully organized and a subscription made prior to and for the purposes of organization."

The effect of a subscription under the Iowa statutes was considered by the Supreme Court of that state in Waukon & Mississippi R. Co. v. Dwyer, 49 Iowa, 121, where it was held that:

"A subscriber to stock becomes a stockholder by virtue of the subscription, in the absence of a provision requiring a payment as a condition of membership, and that, too, without the issuance of any certificate of stock,"

—citing Spear v. Crawford, 14 Wend. (N. Y.) 20, 28 Am. Dec. 513, and other cases, and in Jackson v. Traer, 64 Iowa, 469, 20 N. W. 764, 52 Am. Rep. 449, where it is said:

"An agreement to take stock, when in writing and accepted by the company, creates the relation of stockholder. The issuance of a certificate in such case is not necessary."

Written agreements with the company to take stock in a corporation already existing have often been disclosed to be agreements of subscription and not agreements to purchase. Lincoln Shoe Mfg. Co. v. Sheldon, 44 Neb. 279, 62 N. W. 480; Wemple v. St. Louis, J. & S. R. Co., 120 Ill. 196, 11 N. E. 906; Shipman, Denny, Rhame & Co. v. Portland Const. Co., 64 Or. 1, 128 Pac. 989. In Hawley v. Upton, 102 U. S. 314, 26 L. Ed. 179, the company had been organized in 1857; the subscription was made in 1871 by a written instrument as follows:

"No. ———. The Great Western Insurance Company. $200. [Stamp.] Capital Stock, $500,000, with Liberty to Increase to $5,000,000. Stock Nonassessable. Organized July 20, 1857, under Act of Legislature Approved March 4, 1857.

"Know all men by these presents, that for and in consideration of ten shares of the capital stock of the Great Western Insurance Company of Chicago, Ill., received by me, I am held and firmly bound and agree to pay the Great Western Insurance Company of Chicago the sum of two hundred dollars in installments, as follows: Twenty-five per cent. thereof upon receipt of stock certificate, twenty-five per cent. in three months from date hereof, twenty-five per cent. six months from date hereof, twenty-five per cent. nine months from date, with interest ten per cent. after due.

"Chicago, 7th Jan'y, 1871. Theo. Hawley. [Seal.]"

Hawley paid $25 to the company's agent when he signed this instrument, but paid no more, and no call was made upon him for it, and no certificate of stock was ever issued to Hawley. The suit against Hawley was by the assignee in bankruptcy of the insurance company for the unpaid installments. The judges in the trial court were opposed in opinion on the question whether the delivery of the stock certificate was necessary to constitute the relation of stockholder between the defendant and the insurance company. The Supreme Court held that a subscriber to the capital stock of a corporation must pay his subscription, if required to meet the obligations of the corporation, and that no certificate of stock was necessary to constitute a subscriber, and that all that need be done, so far as creditors are concerned, is that the subscriber shall have bound himself to become a contributor to the fund which the capital stock of the corporation represents. The court also said that what Hawley did "amounted in law to a subscription for the stock, and nothing else." It is to be observed, however, that in this case Hawley's agreement recited that he had received the stock, although it also recited that he was to pay $50 on receipt of the stock certificate. He paid but $25, and had not received the certificate. In a number of cases that court has emphasized the fact that the "unpaid subscriptions" are a part of the fund which creditors may reach. Sawyer v. Hoag, 17 Wall. 610, 620, 21 L. Ed. 731; County of Morgan v. Allen, 103 U. S. 498, 508, 26 L. Ed. 498; Richardson v. Green, 133 U. S. 30, 43, 10 Sup. Ct. 280, 33 L. Ed. 516. The contract signed by the defendants has the title of a subscription contract and the effectual part of the agreement says, "I

hereby subscribe for —––– shares of the capital stock," and at 13 other places it uses the words "subscribed," "subscriber," or "subscription." The intention is plainly manifested that the signer was to contribute to the original capital of the company, as manifested by its original issue of shares of its capital stock, and not to purchase shares owned by the company. The signer could not be released from the agreement without the consent of the company, and he had it in his power at any time to acquire his certificate by compliance with his contract, and should be held to be a stockholder, so far as creditors are concerned, as if he had made his subscription agreement before the articles were filed.

[3, 4] (5) Judgment creditors, who have exhausted the property of the corporation may maintain a bill in equity in a proper case against shareholders and subscribers to stock for such pro rata part of the unpaid balance of their subscriptions as may be necessary to pay the creditor's claims. Ogilvie v. Knox Insurance Co., 22 How. 380, 16 L. Ed. 349; Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Sanger v. Upton, 91 U. S. 56, 62, 23 L. Ed. 220; Terry v. Tubman, 92 U. S. 156, 161, 23 L. Ed. 537; Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885; Patterson v. Lynde, 106 U. S. 519, 1 Sup. Ct. 432, 27 L. Ed. 265; George W. Signor Tie Co. v. Monett & S. W. Const. Co. (D. C.) 198 Fed. 412; In re Phœnix Hardware Co., 249 Fed. 410, 161 C. C. A. 384. See, also, Rutenbeck v. Hohn, 143 Iowa, 13, 121 N. W. 698, 136 Am. St. Rep. 731; Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189; Second Nat. Bank v. Georger (D. C.) 246 Fed. 517, 519; Horner v. Henning, 93 U. S. 228, 233, 23 L. Ed. 879; 1 Cook on Stocks & S. (8th Ed.) § 204. There is a clear distinction between such suits and suits against stockholders and subscribers to recover the full and entire amount of the balance between the amount agreed to be paid and the par value of the stock. In the latter case the action must be at law. Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; United States v. Knox, 102 U. S. 422, 426, 26 L. Ed. 216; Hale v. Allinson, 188 U. S. 56, 78, 23 Sup. Ct. 244, 47 L. Ed. 380; Carey v. McMillan (C. C. A.) 289 Fed. 380; Kelley v. Gill, 245 U. S. 116, 38 Sup. Ct. 38, 62 L. Ed. 185. But in these cases the right to proceed in equity in a proper case is recognized. Thus, in Kennedy v. Gibson, 8 Wall. 498, 505 (19 L. Ed. 476), it is said:

"Where the whole amount is sought to be recovered, the proceeding must be at law. Where less is required, the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court—if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted."

In Carey v. McMillan (C. C. A.) 289 Fed. 380, the suit in equity sought to recover the full amount of the balance of the written subscription made by some of these defendants and others. The court decided that the suit could not be maintained, but observed that a personal judgment was sought against each stockholder, and that no accounting and no contribution was necessary, and there was no community of interest among the defendants on the questions of law and fact. Again, in Kelley v. Gill, 245 U. S. 116, 122, 38 Sup. Ct. 38, 62 L.

Ed. 185, while declaring that a suit in equity by the trustee in bankruptcy of a corporation would not lie to recover the balance due on the shareholders' subscriptions, the court remarked that they had no occasion to consider whether a different rule applied in those cases where an order of the court of bankruptcy was a condition precedent to the existence of liability either because the stockholders were liable only after a call, or because the liability of the stockholder was pro rata and limited to such sums as might in the aggregate be necessary to satisfy the claims of creditors.

In the present case the bill alleges a liability of the defendants in the sum of $1,379,404.70 as the unpaid balance of their subscriptions, a claim of the plaintiff for the sum of $31,800.99, and practical exhaustion of the assets held by the receiver of the Midland Packing Company. The suit is, therefore, not for the full amount of the balance of the subscriptions, but for an accounting and a pro rata assessment of liability among the defendants sufficient to pay the plaintiff's claim, and for contribution. See section 1633, Code of Iowa 1897. True, it is alleged that there are other claims of creditors against the corporation, in the sum of $1,750,000, for money loaned and goods sold; but whether their claims are of the same class as plaintiff's does not appear, nor does it appear when the debts were contracted, nor that those creditors had a right to rely on the subscriptions of the defendants as a basis for credit extended to the corporation. Courtney v. Croxton, 239 Fed. 247, 249, 152 C. C. A. 235. Moreover, it appears that there is a liability by subscribers not resident in the Northern judicial district of Iowa for $1,720,595.30, the difference between the total amount of unpaid subscriptions and the amount of the defendants' unpaid subscriptions.

[5-7] (6) In the cases where creditors have been allowed to maintain such suits against the stockholders for the amount of their unpaid subscriptions, it did not appear that a general receiver had been appointed for the control of the corporation's assets and the winding up of its affairs. In this case, as appears from the bill, the property of the company is in the hands of a receiver appointed in the action entitled Hegnes v. Midland Packing Company (see 269 Fed. 537), and this receiver has practically exhausted the company's assets other than the claims against subscribers to capital stock. The receiver is entitled to all of the assets of the corporation. Presumptively he is in possession of the contracts of subscription and of the promissory notes given by subscribers, so far as they belong to the corporation, and he is entitled to the possession of them as such receiver. It is the receiver's duty to collect the assets of the company. If creditors may maintain a bill of this kind, the receiver does not have control of the assets of the corporation. It is the duty and privilege of the courts appointing the receiver, and of the receiver, and not of the creditors by independent suits on their own behalf, to control the collection of the corporation's claims against its debtors.

After the appointment of a general receiver for the corporation in winding up proceedings, or of a trustee in bankruptcy, such an officer has the sole right to maintain a suit for the collection of the unpaid stock subscriptions. Scovill v. Thayer, 105 U. S. 143, 155, 156, 26 L. Ed.

968; Sawyer v. Hoag, 17 Wall. 610, 621, 21 L. Ed. 731; Hartford-Connecticut Trust Co. v. Doherty (C. C. A.) 286 Fed. 926, 928; Republic Iron & Steel Co. v. Carlton (C. C.) 189 Fed. 126, 131; In re Remington Automobile Co., 153 Fed. 345, 82 C. C. A. 421; Rosoff v. Gilbert Transp. Co. (D. C.) 221 Fed. 972, 979; Winans v. McKean R. & N. Co., Fed. Cas. No. 17,862; 6 Fletcher on Corps. § 4115; 14a Corp. Jur. 987, 994. By the laws of Iowa the liability of the subscribers is an asset of the corporation. See Security Sav. Bank v. Sturtz (Iowa) 196 N. W. 3. In Elson v. Wright, 134 Iowa, 634, 112 N. W. 105, the court says:

"The individual liability of the stockholder under double liability provisions has been treated as analogous to his liability for unpaid assessments, and it is pointed out that, although there is a distinction between these two classes of liability, the one being by way of security to the creditor for the debts of the corporation, and the other a direct liability to the corporation itself, yet as to the methods of enforcement there is no reason for any substantial difference."

In support of the objections to jurisdiction made by some defendants, a number of contentions have been presented.

[8] 1. As there is diversity of citizenship between the plaintiff and the defendants, it is no valid objection to the jurisdiction that the plaintiff sues also on behalf of other persons similarly situated as himself, and that some of those parties may be citizens of the same state as the defendant. Stewart v. Dunham, 115 U. S. 61, 64, 5 Sup. Ct. 1163, 29 L. Ed. 329; Rose, Code Fed. Proc. § 2 (4).

[9] 2. The amount in controversy is the amount of the plaintiff's bona fide claim, and as that is over $3,000, exclusive of interest and costs, the requisite amount is involved. Lion Bonding Co. v. Karatz, 262 U. S. 77, 85, 86, 43 Sup. Ct. 480, 67 L. Ed. 871; Handley v. Stutz, 137 U. S. 366, 369, 11 Sup. Ct. 117, 34 L. Ed. 706; Johnson v. Waters, 111 U. S. 640, 674, 4 Sup. Ct. 619, 28 L. Ed. 547; Chicago Title & Trust Co. v. Newman, 187 Fed. 573, 576, 109 C. C. A. 263.

3. The fact that the amount sought to be recovered from some of the defendants is less than $3,000 is not ground for sustaining the objections by such defendants to jurisdiction over them. Robertson v. Conway, 188 Fed. 579, 583, 110 C. C. A. 377.

4. The court has jurisdiction, although the claims of some of the creditors who may come in may involve less than $3,000. Alsop v. Conway, 188 Fed. 568, 576, 110 C. C. A. 366; Handley v. Stutz, 137 U. S. 366, 367, 369, 11 Sup. Ct. 117, 34 L. Ed. 706.

[10] 5. The suit is not upon an assigned chose in action, and therefore the citizenship of the original payee is immaterial. The judgment recovered by plaintiff in the state court was not against the makers of the notes, but was for money borrowed by the Midland Packing Company from plaintiff's predecessor in interest and upon the independent contracts of indorsement and guaranty made by that company. Young v. Bryan, 6 Wheat. 146, 5 L. Ed. 228; Mullen v. Torrance, 9 Wheat. 537, 6 L. Ed. 154.

The suit now pending is not upon that judgment, although its recovery was a preliminary step to this suit; it is upon the alleged contractual liability of the defendants directly to a creditor like the plain-

tiff because of the stock subscription, a liability which, in a proper case, the creditors may enforce, not through the corporation, but directly, and as made for their own benefit. The objections to jurisdiction are not sufficient ground for refusal to entertain the suit. Bean v. Smith, 2 Mason, 252, Fed. Cas. No. 1,174; Stanwood v. Wishard (C. C.) 134 Fed. 959.

[11] 6. It is no objection to the jurisdiction of this court that some of the defendants reside in, and were served with subpœna in chancery in this case in the Southern judicial district of Iowa. Judicial Code, § 52 (Comp. St. § 1034).

As this suit is not brought by the receiver, it cannot be maintained. Other questions have been submitted in support of the motions to dismiss. It is not necessary at this time to determine them, in view of the conclusion which has been reached.

The motions to dismiss the plaintiff's bill will be sustained.